FILED
2009 Jan-29 PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DANTRIELLE RIVIERE, o/b/o D.W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-G-0681-NE |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Dantrielle Riviere, o/b/o D.W., brings this action on behalf of her daughter, D.W., pursuant to the provisions of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income under Title XVI of the Act.

Plaintiff filed an application for child's Supplemental Security Income benefits. Benefits were denied at the administrative level and an administrative law judge found plaintiff not to be eligible for benefits. This decision became final when the Appeals Council denied a request for review.

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards

were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen,

831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The definition of Child's SSI disability provides that a claimant under the age of eighteen shall be considered disabled if the claimant has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity." 20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); See 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings). The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled. 20 C.F.R. § 416.924. The three-step process requires a child to show: (1) that she is not working; (2) that she has a "severe" impairment or combination of impairments; and (3) that her impairment or combination of impairments is of listing-level severity, that is, the impairments meet, medically equal, or functionally equal the severity of an impairment in the listings. 20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the ALJ must determine if the child's impairments meet or medically equal an impairment listed in the listings. 20 C.F.R. § 416.924(a)-(d). If the child's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are

3

functionally equivalent in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926a(a). For the child's impairments to functionally equal a listed impairment, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In accordance with the regulations, ALJ Patrick R. Digby determined the plaintiff[1] had not engaged in substantial gainful activity. [R. 18]. The ALJ then found the plaintiff's congenital cataracts with resultant blindness in the right eye and oppositional defiant disorder were severe within the meaning of the Commissioner's regulations. [Id.]. At the final step of the sequential evaluation, the ALJ found the plaintiff did not have an impairment or combination of impairments that met or functionally equaled a listed impairment. [Id.].

In assessing the plaintiff's functional limitations, the ALJ found that the plaintiff had less than marked limitations under domain three, Interacting and Relating With Others, and domain five, Caring for Himself or Herself. The ALJ also found that the

---

[1] Further references in this opinion to the plaintiff will be to the child, D.W., on whose behalf this action was brought.

plaintiff had no limitation under domain six, Health and Physical Well-Being.  These conclusions are not supported by substantial evidence.

In order to find the plaintiff was not disabled, the ALJ discounted the opinion of the plaintiff's treating ophthalmologist, R. Keith Stevens, M.D., who opined on February 28, 2007, that the plaintiff had an extreme limitation in domain six, Health and Physical Well-Being.  The plaintiff suffered from congenital cataracts which required a lensectomy and anterior vitrectomy of the right eye in December, 1998, when the plaintiff was six months old.  [R. 173].  A year later, she underwent a secondary implant procedure in the same eye.  [R. 215].  Dr. Stevens, after examination and testing, found that the plaintiff suffers from microophtalmia[2] of the right eye,  nystagmus[3], and refractive amblyopia[4].  Dr. Stevens completed an "Assessment Form for Children (age six to attainment of age twelve)" wherein he found the plaintiff had an extreme limitation in domain six, Health and Physical Well-Being.  Dr. Stevens stated his basis of assessment was:

> Due to vision impairment right eye – visual field is compromised especially on right side – pt has to make conscious effort to be cognitive of stimuli on right – must turn head due to heavily relying on left eye.

[R. 148].

---

[2] Literally, "small eye."  Developmental failures cause a malformation of the choroid tissue of the eye, resulting in the drainage of vitreous humor.  Lacking this fluid, the eye fails to grow normally.

[3] "[A]n involuntary, rapid, rhythmic movement of the eyeball, which may be horizontal, vertical, rotatory, or mixed, i.e., of two varieties."  Dorland's Illustrated Medical Dictionary 1164 (28th Ed. 1994).

[4] Literally, "dull eye" or "lazy eye."

ALJ Digby gave little weight to Dr. Stevens's opinion:

> because he apparently only examined the claimant one time, and the only evidence we have that he understood what "extreme" means and what "Health and Physical Well-Being" entails is what was printed on that form. His narrative explanation is not very helpful because he does not explain how much "compromise" of the visual field there is, etc.

[R. 20]. The ALJ makes several assumptions[5] about the opinion of Dr. Stevens, all of which are not reasonable. Because Dr. Stevens is a specialist in the field of ophthalmology, his opinion is entitled to more weight in this area.[6] In discounting the testimony of Dr. Stevens, the ALJ "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Because the ALJ failed to properly refute the opinion of Dr. Stevens, as a matter of law that testimony must be accepted as true. Therefore, the plaintiff has an extreme limitation in one of the six domains, and functionally meets the listings and is disabled.

Deborah McLaughlin, the plaintiff's third-grade teacher, completed a "Teacher Questionnaire" on February 20, 2007, and May 2, 2007. [R. 144-146 and 152-160]. Ms. McLaughlin stated that she makes accommodations for the plaintiff in the classroom, and responded to questions regarding her abilities and functions as follows:

---

[5] In his decision, the ALJ also found that "[a]lthough there are allegations of headaches, the record fails to indicate any report of those." [R. 20]. However, clearly indicated by Dr. Stevens on his examination report is that the plaintiff complained to him of headaches, and had a history of headaches. [R. 233].

[6] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

6

> [The plaintiff] exhibits defiance to adults in charge. She gets very angry when confronted or corrected. No, her behavior is not age appropriate.
>
> There are issues with concentration and being able to work independently. She has to be reminded to complete tasks.
>
> [The plaintiff] is oppositional and stubborn when she is not allowed to do what she wants. Many times when corrected for unacceptable behavior she screams out and becomes very angry. This occurs on a regular basis at least once or twice per week.
>
> [The plaintiff] has difficulty interacting with her classmates. She seeks their attention but many times it comes out in a negative manner. No, these are not typical of her classmates.
>
> Her vision along with behavior issues causes [sic] her to need extra assistance.
>
> She has to hold her head in an irregular position to see. Never does she complain, but it is obvious it is a problem. the emotion and behavior problems are of great concern.
>
> [The plaintiff] is a sweet and loving child as long as she is not crossed. If confronted she becomes very angry and disruptive. The class is alarmed by her outbursts. She does come accross [sic] different because of her inability to get along w/ others.

[R. 144-145].

Ms. McLaughlin also completed a Teacher Questionnaire assessing the plaintiff according to the six domains. Under domain 3, Interacting and Relating With Others, Ms. McLaughlin noted that the plaintiff had a serious problem with seeking attention appropriately. [R. 155]. The teacher also found a very serious problem in the areas of expressing anger appropriately, asking permission appropriately, following rules (classroom, games, sports), and respecting/obeying adults in authority. [Id.]. Noting that it

has been necessary to implement behavior modification strategies for the plaintiff, Ms. McLaughlin said, "She is very explosive and has tantrums." [Id.].

Under domain 5, Caring for Himself or Herself, Ms. McLaughlin stated that the plaintiff has an obvious problem knowing when to ask for help, a serious problem with being patient when necessary, and a very serious problem in the areas of handling frustration appropriately, identifying and appropriately asserting emotional needs, responding appropriately to changes in her own mood (e.g., calming herself), and using appropriate coping skills to meet the daily demands of the school environment. [R. 157].

The ALJ gave great weight to the teacher's assessment[7]. "Although the teacher is not a medical source, she was able to see how the claimant functioned on a day to day basis and around a variety of other people for many months." [R. 21]. However, in assessing that the plaintiff has a less than marked limitation in domain 3, Interacting and Relating with Others, the ALJ stated, "Although the claimant sometimes has outbursts and tantrums at both school and home, overall she is liked an likable and gets along." [R. 23]. This conclusion is in direct conflict with the teacher's testimony. In evaluating that the plaintiff has a less than marked limitation in domain 5, Caring for Himself or Herself, the ALJ opined, "Despite vision problems, she does a very good job of performing age-

---

[7] The ALJ found that the teacher's testimony was consistent with a report from Lois Petrella, the Commissioner's consulting clinical psychologist. [R. 21]. Dr. Petrella, a one-time examiner, diagnosed Oppositional Defiant Disorder NOS, but considered it to be of a mild severity. This is inconsistent with the testimony of the plaintiff's teacher, who spent hours each day with the plaintiff over the course of a school year, as opposed to a one-time examination.

appropriate self-care activities, in particular dressing and grooming, which she does independently." [R. 24]. In order to find a less than marked limitation in this area, the ALJ improperly ignored the teacher's testimony that the plaintiff has very serious problems with her emotional responses to everyday classroom situations.

The evidence shows that the plaintiff has at least marked impairments in three of the six domains. Therefore, her impairments functionally equal the listings.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 29 January 2009.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.